## Richmond

James Harold Johnson, Jr., v. Commonwealth of Virginia.

April 26, 1971.

Record No. 7369.

Present, All the Justices.

*Andrew S. Krulwich* [D. C.] (*Joseph M. Spivey, III; Thomas G. Slater, Jr.; Mitchell Rogovin; Peter K. Bleakley; Reid Peyton Chambers; Hunton, Williams, Gay, Powell & Gibson; Arnold & Porter* [D. C.], on brief for plaintiff in error.

*William T. Lehner, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Harman, J., delivered the opinion of the court.

James Harold Johnson, Jr., (Johnson) was found guilty after waiv-

ing trial by jury of possessing more than twenty-five grains of marijuana. His sentence was confinement in the penitentiary for twenty years and a $500.00 fine. Ten years of Johnson's confinement were suspended. A writ of error and *supersedeas* was awarded to review the case.

The record necessitates consideration of two questions: (1) Whether Johnson was entrapped; and (2) Whether the last proviso of Code § 54-516,[1] under which Johnson was sentenced, was applicable to the possession of more than twenty-five grains of marijuana.

Consideration of the entrapment question requires a brief recital of the circumstances leading to Johnson's arrest. Johnson, who did not testify, relies entirely on the Commonwealth's evidence to establish the defense of entrapment.

During the 1967-68 school year the Prince George County Sheriff's Office received numerous complaints from parents concerning the use of narcotic drugs at the Prince George High School. In the summer of 1968 Thomas Lauter (Lauter), a student at Prince George, agreed to assist the sheriff's office in uncovering the supplier or suppliers of drugs to students at the high school by attempting to make a purchase. Lauter "had an idea" that Johnson was a supplier of marijuana. Lauter talked to Johnson on four or five separate occasions about purchasing marijuana before Johnson agreed to supply him.

Deputy Sheriff M. J. Vrable, Jr. (Vrable) testified without objection, that Lauter reported to him, after first contacting Johnson, that Johnson would be unable to supply Lauter until Johnson's supplier in Hopewell received a supply. Vrable then instructed Lauter to continue in his efforts to purchase marijuana from Johnson.

Johnson phoned Lauter at home and told him that he (Johnson) could supply Lauter with marijuana. The two agreed that the purchase of marijuana for $200.00 would take place Thursday night, November 14, 1968.

On Thursday night Lauter obtained $200.00 in marked money from the sheriff's office. He then picked up Johnson at his home and the two drove to the Hopewell Tastee Freez. Enroute, Lauter gave Johnson the marked money. Lauter and Johnson met Stephen Jessup (Jessup) at the Tastee Freez. Jessup gave Johnson 21 small brown envelopes containing marijuana and Johnson gave Jessup the marked money.

---

[1] The Uniform Narcotic Drug Act, Code §§ 54-487 to 54-519, was repealed by Acts 1970, c. 650.

Lauter and Johnson then proceeded to the parking lot of a restaurant in Prince George County. After parking there, Johnson gave Lauter five of the brown envelopes containing marijuana. At this point, Vrable, who was concealed nearby and had witnessed this exchange, stepped up to the car and arrested Johnson. Jessup was arrested by other officers after Lauter and Johnson had left the Tastee Freez.

In *Sorrells* v. *United States*, 287 U.S. 435 (1932), Mr. Justice Roberts, in a concurring opinion, stated that,

"(e)ntrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." 287 U.S. at p. 454.

We have adopted this definition of entrapment. *Swift* v. *Commonwealth*, 199 Va. 420, 424, 100 S.E.2d 9, 12 (1957); *Ossen* v. *Commonwealth*, 187 Va. 902, 911, 48 S.E.2d 204, 208 (1948); *Falden* v. *Commonwealth*, 167 Va. 549, 555-56, 189 S.E. 329, 332 (1937).

The defense of entrapment is, in essence, a rule of fairness that bars the conviction of an accused in the event of improper police conduct. *Ritter* v. *Commonwealth*, 210 Va. 732, 739, 173 S.E.2d 799, 804 (1970); *Swift* v. *Commonwealth*, *supra*, 199 Va. at p. 424, 100 S.E.2d at 12; *Ossen* v. *Commonwealth*, *supra*, 187 Va. at p. 911, 48 S.E.2d at p. 208; *Guthrie* v. *Commonwealth*, 171 Va. 461, 466, 198 S.E. 481, 483 (1938); *See Sherman* v. *United States*, 356 U.S. 369, 372 (1958); *Sorrells* v. *United States*, *supra*, 287 U.S. at p. 451. Police conduct that constitutes entrapment is contrary to public policy. *Guthrie* v. *Commonwealth*, *supra*, 171 Va. at p. 466, 198 S.E. at p. 483; *Bauer* v. *Commonwealth*, 135 Va. 463, 466, 115 S.E. 514, 515 (1923); *see Sherman* v. *United States*, *supra*, 356 U.S. at p. 372; *Sorrells* v. *United States*, *supra*, 287 U.S. at p. 448-49.[2]

A distinction is made between police conduct that merely affords an opportunity for the commission of an offense and "creative ac-

---

[2] Whether the theory underlying the defense of entrapment as a bar to conviction is: (1) that the legislature did not intend the statute be applied in such instances; or (2) that the courts will not lend their process in such instances, is academic, since in either instance the result will be the same, and theory is subservient to the stated policy.

A conviction procured by entrapment may be in violation of the due process clause of the U.S. Constitution. *Banks* v. *United States*, 249 F.2d 672, 674 (9th Cir. 1957).

tivity" that implants in the mind of an otherwise innocent person the disposition to commit an offense and induces its commission in order to prosecute. Where the police do no more than afford an opportunity for the commission of an offense a subsequent conviction will not be barred on the ground of entrapment. *See Swift* v. *Commonwealth, supra; Dorchincoz* v. *Commonwealth,* 191 Va. 33, 59 S.E.2d 863 (1950); *Harris* v. *Commonwealth,* 174 Va. 486, 6 S.E.2d 678 (1940); *cf. Ossen* v. *Commonwealth, supra.*

In the case at bar the evidence does not support the alleged entrapment. The sheriff's office had received complaints that drugs were present in the high school. Alerted to the possibility of criminal activity the sheriff's office, quite properly, undertook to investigate and to detect offenders, if any. In the process they merely afforded an opportunity for the commission of an offense. The evidence clearly shows that Johnson was not a victim of improper police conduct.

■ We next consider whether the last proviso of Code § 54-516 was applicable to the possession of more than twenty-five grains of marijuana. Some analysis of the former Uniform Narcotic Drug Act (the Act) is necessary.[3]

Code § 54-488 provided: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this article." The exceptions referred to in § 54-488 are not applicable to this case.

Code § 54-487 provided in pertinent part:

"The following words and phrases, as used in this article, shall have the following meanings, *unless the context otherwise requires:*

\*　　\*　　\*

"(14) '*Narcotic drugs*' means coca leaves and opium, cannabis . . . .

\*　　\*　　\*

"(19) '*Cannabis*' means and includes all parts of the plant Cannabis Sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin . . . ."[4] (emphasis supplied)

---

[3] *See* footnote 1, *supra.*

[4] The plant Cannabis Sativa L. yields three grades of hallucinogenic materials which listed in their order of potency are hashish, ganja and marijuana. Cannabis is a technical term encompassing hashish, ganja and marijuana.

Code § 54-516 in part provided:

"Any person violating any provision of this article shall upon conviction be punished, for the first offense, by a fine of not more than one thousand dollars and be imprisoned in the penitentiary not less than three nor more than five years. For a second violation of this article . . . *relating to the . . . possession of narcotic drugs or marijuana* . . . the defendant shall be fined not more than two thousand dollars and be imprisoned not less than five nor more than ten years. For a third or subsequent violation . . . *relating to the . . . possession of narcotic drugs or marijuana* . . . the defendant shall be fined not more than three thousand dollars, and be imprisoned in the penitentiary not less than ten nor more than twenty years.

\* \* \*

"Provided, further, that if the offense consists of the possession of illegally acquired narcotic drugs in any quantity greater than twenty-five grains, if in solid form, or eight ounces, if in liquid form, *of any opiate or narcotic drug,* any person found guilty thereof shall be fined not more than five thousand dollars and imprisoned not less than twenty nor more than forty years." (emphasis supplied)

Code § 54-487 was amended in 1952 to include "cannabis" within the definition of "narcotic drugs" contained in subparagraph (14) and to add the definition of "cannabis" contained in subparagraph (19). A 1952 amendment to § 54-516 added the term "marijuana" to the first paragraph in two places. Acts 1952, c. 451.[5] The final proviso of § 54-516 now in question was added by a 1958 amendment. Acts 1958, c. 535.

We have said too often to require citation that criminal statutes are to be strictly construed in favor of the defendant and cannot be extended by construction or implication to favor the Commonwealth. *E.g., Price* v. *Commonwealth,* 209 Va. 383, 164 S.E.2d 676 (1968). In the instant case the Attorney General admitted at oral argument that the scheme of the penalty provision of the Act (§ 54-516) was somewhat unclear.

It is especially significant that the 1958 amendment to § 54-516, which added the final proviso to that section, did not expressly in-

---

[5] *See* footnote 4, *supra.*

clude the term "marijuana" in the proviso. This omission, taken together with the express inclusion of the term "marijuana" in the 1952 amendments to § 54-516 and the qualifying language, "unless the context otherwise requires", contained in § 54-487, leads us to conclude that the final proviso of § 54-516 was not applicable to the possession of more than twenty-five grains of marijuana.

The case will be remanded to the trial court for resentencing in accord with this opinion.

*Reversed and remanded.*